**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 09-1428

———————

UNITED STATES OF AMERICA

v.

TERRIL EDWARDS, also known as, TARIQ RAYMOND EDWARDS
also known as, TERRELL HOWARD

Terril Edwards,
                                        Appellant.

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
( D. C. No. 2-08-cr-00027-001 )
District Judge:  Hon. John R. Padova

———————

Submitted under Third Circuit LAR 34.1(a)
on November 17, 2009

Before:  AMBRO, ALDISERT, and ROTH, Circuit Judge

(Opinion filed: May 6, 2010 )

———————

O P I N I O N

———————

**ROTH,** Circuit Judge:

**I.     Introduction**

Terril Edwards appeals his judgment of conviction and sentence on one count of possession of more than 50 grams of crack-cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1), one count of carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Edwards alleges that the District Court erred by denying his pretrial motion to suppress evidence of the crack-cocaine and firearm found on his person during a *Terry* stop.  We will affirm the judgment of the District Court.

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We review a district court's findings on a motion to suppress for clear error, and exercise plenary review over its application of the law to the facts.  *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007).  As the facts are well known to the parties, we give only a brief description of the facts and procedural posture of the case.

**II.     Background**

On the night of June 2, 2007, plainclothes officers John Calhoun and William Seifert observed Edwards walking in the 13th Corridor of Philadelphia, a high-crime area, with another black man and a black woman.  Believing that the group matched a description from a crime bulletin, which contained information about two recent robberies

2

in the area committed by a team of two black males and a black female, the officers decided to follow the group in their unmarked car. Edwards and his companions were looking all around as they walked, possibly "casing" potential victims. After the group turned down a small street, the officers approached them, identified themselves as police, and asked if any of them lived near where they were congregating. Edwards became visibly agitated and began moving his body and screaming. For their protection, the officers directed all three individuals to place their hands on the hood of a nearby parked car. Edwards refused to do so and, instead, kept reaching toward his side. Officer Calhoun attempted to force Edwards's hands onto the hood of the car, at which point he felt a gun in Edwards's waistband. Edwards was arrested, and a frisk recovered a gun and 70 grams of crack-cocaine.

Edwards moved to suppress evidence of the crack-cocaine and the gun, claiming that the officers lacked reasonable suspicion to stop him. The District Court denied the motion. On September 24, 2008, a jury found Edwards guilty on all three counts. Edwards appealed.

## III. Discussion

Consistent with the Fourth Amendment, an officer may stop an individual if he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *United States v. Yamba*, 506 F.3d 251, 255 (3d Cir. 2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1969)). In determining

3

whether reasonable suspicion existed, the district court must examine the totality of the circumstances confronting the officers, and eschew analyzing any one factor in isolation. *United States v. Nelson*, 284 F.3d 472, 475 (3d Cir. 2002). Additionally, during the course of a stop an officer may perform a limited outer-clothing search of an individual who he has reason to believe poses a threat to his safety. *Terry*, 392 U.S. at 30.

As an initial matter, we agree with the District Court's conclusion that the actual stop occurred when the officers ordered Edwards to place his hands on the hood of the parked car. *See United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (*Terry* stop occurs once there is "application of physical force to restrain movement" or "submission to 'a show of authority'") (citation omitted)). Furthermore, the entirety of the circumstances, as described by Officers Calhoun and Seifert at the suppression hearing and properly found by the District Court to be credible, justified the *Terry* stop of Edwards. First, the officers believed that Edwards and his two companions, who were observed walking in a high-crime area after 11 p.m., matched the description of the robbery team described in the crime bulletin. *See United States v. Hensley*, 469 U.S. 221, 229-34 (1985) (finding reasonable suspicion based on description in flyer of suspect wanted for a completed felony); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (presence in a high-crime area is "a relevant contextual consideration[] in a *Terry* analysis"). Second, the group was looking in all directions while walking, appearing to be "casing" people for potential robberies. *See Terry*, 392 U.S. at 23, 28 (suspicious

4

behavior of casing a store supported investigatory stop). And third, Edwards became irate when the officers questioned where he lived, which they were entitled to do even without reasonable suspicion. *See United States v. Drayton*, 536 U.S. 194, 200 (2002) (police do not violate the Fourth Amendment "merely by approaching individuals on the street . . . and putting questions to them if they are willing to listen"). All of these facts, known to the officers at the time, gave the officers a reasonable and articulable suspicion that criminal activity was afoot, thereby permitting a *Terry* stop of Edwards.

Once Edwards resisted the officers' request to place his hands on the hood of the car and continued reaching toward his side, Officer Calhoun was justified in using physical force to place Edwards's hands where he could see them. *See Hensley*, 469 U.S. at 235 (officers may take necessary steps "to protect their personal safety and to maintain the status quo during the course of the stop"). At that point, Officer Calhoun felt a gun in Edwards's waistband, and he was justified in handcuffing Edwards and seizing the gun. *See Yamba*, 506 F.3d at 255-56 (officer justified in patting down suspect during a stop who he believed was armed and presently dangerous); *United States v. Moorefield*, 111 F.3d 10, 13 (3d Cir. 1997) (a stop based on reasonable suspicion may include a limited pat-down frisk for weapons) (citing *Terry*, 392 U.S. at 27)). Both the stop and frisk were supported by reasonable suspicion. Accordingly, the District Court properly denied Edwards's motion to suppress the evidence.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of conviction.